Our next case on the call of the docket is Agenda No. 14, Case No. 115-473, the Board of Education of Roxana Community Unit School District No. 1 Appellant v. the Illinois Pollution Control Board, et al., Appalese. Counsel for the Appellant, please proceed. May it please the Court, my name is Stuart Witt and I represent the Board of Education of Roxana Community Unit School District No. 1. The primary issues involved in this appeal are whether the Pollution Control Board is precluded from allowing a taxing body, such as the Roxana School District, to intervene in pollution control facility certification proceedings, even though the Board has found that the district has sufficient interest to do so, and whether the Appellate Court has jurisdiction to review the Pollution Control Board's decisions on intervention. These issues are critically important because neither the Environmental Protection Agency nor the Board is applying the proper primary purpose test in considering applications for pollution control certification. They choose instead to apply a but-for test, briefly analyzing the underlying purpose of the equipment. The Courts, particularly the Fourth District and the First District, have universally rejected any consideration of a but-for test in pollution control certification. These proceedings started just as WRB was completing a $3.8 billion expansion of its Wood River Refinery. As it was completing its expansion, it filed 28 separate applications for pollution control certification with the Environmental Protection Agency and the Pollution Control Board for improvements valued at $1.2 billion. At the same time, it was proceeding before the Madison County Board of Review, and it represented to the Board of Review that it had more applications on file for a grand total in excess of $3 billion of equipment that they claimed to be pollution control facilities. In Madison County, all of these refining units are, in fact, real property subject to real estate taxation. Now, the Illinois General Assembly has deemed it advisable to provide incentives for industries, for farm operations, and others to make improvements designed for the primary purpose of reducing or eliminating pollution. Two incentives were originally provided, exemption from sales and use tax and preferential treatment for property tax. While the exemption for sales and use tax no longer exists, the preferential property tax treatment continues. The rationale here is simple. If an owner of a manufacturing or farming operation installs improvements designed for the primary purpose of reducing or eliminating pollution caused by its operation, caused by the manufacturing operation, then the owner should receive preferential property tax for those improvements. But if the primary purpose of the improvements is not pollution control, that is, it's not the reduction of pollution from the operation of the plant, then no preferential treatment should be granted, and the taxpayer's fair share of the local property tax burden should be determined just like every other business owner and every other property owner. In denying the school district's petitions to intervene, the Pollution Control Board is ensuring that its determination and its interpretation of the primary purpose test will be left unchallenged and not subject to judicial review. Because what happens here is this. The agency makes a recommendation, the board receives the recommendation, the board approves the application, and that's the end of it. So in the 28 cases currently before the court, in a matter of less than two weeks from receiving the EPA's recommendation, the board wiped $1.2 billion off the local assessment rolls, with no notice to a taxing body, with no notice to anybody. When we discovered that they had, in fact, filed these applications, and when we discovered that, in fact, they were on the docket of the Pollution Control Board, we immediately filed petitions to intervene, alleging our interests. Initially, the agency acknowledged that the school district had a substantial interest in whether or not these items get certified as pollution control facilities. But WRB, the taxpayer, came in and said, no, no, under the Supreme Court's ruling in Landfill, Inc., you can't consider the petition to intervene. You cannot allow the school district to participate in the proceeding, because the property tax code, in their view, assumes a circumscribed proceeding. The statutory primary purpose test seeks to determine the function and the ultimate objective of the improvement at issue. Though only those facilities directly involved in the pollution abatement process are to be afforded special status. The test encompasses equipment that has absolutely no substantial function in the manufacturing or processing or refining process, other than to abate pollution caused by the plant's operation. The Environmental Protection Agency and the Pollution Control Board are, in our view, blatantly ignoring the requirements of the primary purpose test, and instead applying a but-for test analyzing the underlying purpose, which, as I indicated, the courts have regularly refused to consider. Now, there is absolutely nothing in the property tax code that precludes intervention in pollution control certification proceedings. The Illinois Pollution Control Board is statutorily charged with receiving and reviewing applications and then making a determination of whether the primary purpose of the improvements is the reduction or prevention of air or water pollution, as those terms are defined in the Act. If and only if the primary purpose is the reduction or prevention of pollution, then the board is to issue a certificate and the property is removed from the local assessment rules. Notwithstanding the statutory process, the board has delegated to the agency the responsibility to develop the application form, to receive the application, to review the application, to ask questions of the applicant, and then to make a recommendation. Do you disagree with opposing counsel that if we agree with you on the jurisdictional question that the appropriate course of action would be to remand to the appellate court on all the substantive issues that you're talking about? I don't believe that it's necessary for you to remand it to the appellate court for all the substantive issues because all those issues are effectively before this court. The Fourth District basically washed its hands of this matter and did not want to consider it, and for that reason I think it's all up here and it does not have to go back to the Fourth District. But obviously we, you do understand we took it for the jurisdictional issue because that's really all we had, right, at the time. Well, I was of the view that you probably have the jurisdictional issue as well as the intervention issue. Yeah, I'm not saying we're precluded from looking at it. I just wondered what your take was on it, whether it should be handled here. We have everything we need, you think, here to resolve all of the underlying issues? I'm sorry. Yeah. I'm sorry. We have everything in the record. You have the entire record before you, and I believe that you have everything that you need to handle all of the issues that are before you. Okay. And, again, to reiterate what is before you is whether or not the board is precluded from granting intervention, whether or not the appellate court has jurisdiction to review the board's orders on intervention, and whether or not the board is, in fact, following the proper primary purpose test. That's all in the record before you in our view. On jurisdiction, I don't want to get you off your argument too much, but what provision do you think applies with respect to the jurisdictional argument? With regard to the issue of jurisdiction, at least as it pertains to parties who are attempting to intervene in proceedings before the Pollution Control Board, Section 41A of the Environmental Protection Act applies. That's where the dispute lies, because we're going to hear that 1160 is more specific, and that should apply. You're going to hear that Section 1160 is more specific in that it provides, and it specifically provides that applicants or holders may seek administrative review under the administrative review law. Section 1160 doesn't say you go to the circuit court. Section 1160 doesn't say you go to the appellate court. Section 1160 is silent on the issue of where applicants and holders go. The concept here at the Fourth District was that, and Justice Appleton recognized this, the concept is that applicants and holders are, it's a more specific statute, and therefore they go to the circuit court. But all of the environmental, all of the activities of the Pollution Control Board, while they're under the property tax code, they're also under the Environmental Protection Act, because they don't have any authority. They don't exist without the Environmental Protection Act. So when the property tax code says you receive applications and review them, and then you're to make a determination of whether or not an item qualifies as a pollution control facility under the Act, the Board is, in our view, acting under the Act just as much as they're acting under the property tax code. Doesn't the note, the fact that it says under the administrative review law indicate where that review should be taken? Well, the reference under the administrative review law would lead one to imply that applicants and holders must go to the circuit court. But the statute makes no reference to interveners. The statute makes no reference to the Environmental Protection Agency, which the Pollution Control Board makes an adversary in these types of proceedings. When the agency files an application with the Pollution Control Board, the Pollution Control Board sets it up as an adjudicatory case under Part 101 of its rules. It makes the applicant, the petitioner, the agency, the respondent. So in the unlikely event that the agency were to recommend denial of the application, but the Board said, no, we're going to grant the application, under their construction of the statute, the agency, who is definitely a party to the proceeding, would have no right to appeal because, in their view, Section 41A can't convey appeal rights. The only thing that 1160 does, and it is specific, it says that applicants and holders are to go under the administrative review law. Interestingly enough, since 1990, to our knowledge, the Pollution Control Board has never granted a property tax certification or ruled on a certification issue without sending all the parties to the appellate court. In each of the cases that we have before us, in each of the 28 applications, they certify the requested items as pollution control facilities and said, if anybody is unhappy with this order, you go to the appellate court under Section 41A. There were two orders that they entered, in number 39 and number 40, before the Pollution Control Board. One, I think, dealt with the ultra-low sulfur diesel unit, and I think one of them dealt with the gasoline SZORB unit. In both of those instances, they entered orders the same day that we mailed in our petitions to intervene. In both of those instances, they granted the certifications, but then they said, WRB agency, if you wish to appeal from this order, you go to the appellate court under Section 41A. And page 50 of WRB's brief, they call to the court's attention, the last thing in the brief, right above the signature, they call to the court's attention six different Pollution Control Board orders, where other equipment at other refineries have been certified as pollution control facilities. In every one of those orders, the Pollution Control Board tells the applicant, you go to the appellate court under Section 41A and Supreme Court Rule 335. Every one of those orders. In no order do they say you go to the circuit court. So that's their interpretation. Now, the Attorney General has argued that the agency, because it's vested with the expertise and the knowledge, that their interpretation of their statutes should be given some deference. If we're going to give deference to the agency with regard to its interpretation of the statutes, you have to look at the orders they've entered. And in each and every order they've entered, they sent applicants and the agency alike to the appellate court under Section 41A. In fact, this goes all the way back to 1990, 23 years ago. At that point in time, the Reed Custer School District filed an application to decertify the cooling ponds at the Braywood Nuclear Power Station, claiming that they were not pollution control facilities, that they were essential to the manufacturing process. The pollution control, the Commonwealth of Edison tried to get the petition to revoke, dismissed on the basis that third parties couldn't participate. The Pollution Control Board embraced the school district and said, come and participate in this proceeding. The Pollution Control Board ultimately had a hearing and decided, no, this is in fact a pollution control facility, under Section 1130, I think, of the code, under Section 1160 of the code. The appellate court then turned around and sent Commonwealth Edison Company and the Reed Custer School District to the appellate court under Section 41A. So even where they've acted under the statute with regard to pollution control certification applications and certificates, they're sending the parties to the appellate court under Section 41A. Mr. Witt, under that Reed Custer case, did the court actually analyze the jurisdictional question or was it merely assumed? What the court said was the court, in their decision, had an acknowledgment in the background of the case that the case came directly to the court from the Pollution Control Board under Section 41 of the Act, the Environmental Protection Act, and pursuant to Supreme Court Rule 335. And that was it. So it was just more in terms of the historical context. But there was, to answer my question, I want to make sure. There was not a detailed analysis. There was no holding on the jurisdiction. But significantly, the Pollution Control Board, the Environmental Protection Agency, never objected to jurisdiction, as they are doing here. So why is it different now? Why is it different now? Because they don't want local taxing bodies weighing in on their determination of what's a pollution control facility. You have an ultra-low sulfur diesel expansion project, a $400 million project. It produces diesel fuel for use in diesel engines in this country. Diesel fuel, unless it's ultra-low sulfur, will destroy catalytic converters. The real pollution control is the catalytic converters. And this court, back in 1975, I think in Heller, indicated catalytic converters are not pollution control facilities exempt from sales and use tax. But it's the catalytic converter that reduces or eliminates the particulates in the gasoline and diesel fuel. The ultra-low sulfur diesel expansion project, this $406 million project, enables the company to produce diesel fuel that can be sold at the pump to us here in Chicago, in Aurora or Wheaton or wherever the case may be, so that we can drive our cars up here and not pollute the community up here. But the people who are bearing the brunt of it under the board's analysis, their very brief analysis, the people who are bearing the brunt of it are the folks at the local community where the manufacturing operation takes place. We maintain, and we believe that the courts have held, that that is not the intention of the primary purpose test. The whole purpose of the primary purpose test is so that people who enjoy the benefits of pollution control, scrubbers on smokestacks, the manure-containing facilities on farms, the people who enjoy the benefits of that bear the burden of it. And that's what it's designed to do. We believe that the Pollution Control Board denied these matters because basically they didn't want to take them up, because they've got their preconceived notion. When we filed our petitions to intervene, the agency, while they acknowledged that we had a substantial interest in this proceeding, called us litigious, okay, because of the fact that we wanted to participate and because of the fact that we wanted to protect our property tax base. And we all know, and you all know, that the real parties in interest in matters of this type are the local taxing bodies. It's the case with appeals to the Property Tax Appeal Board, tax objection cases, as you all recognize in Madison, too. It's also the case here. Whether or not something gets removed from the local property tax rolls doesn't impact the Pollution Control Board, doesn't impact the Environmental Protection Agency. What's the incentive to the PCB in a situation like this? You went through that whole indication of the catalytic converters and they didn't even, what's the incentive here to find the way they found it? I believe that the incentive here is that they have to work with these refiners and these polluters on a daily basis. And I think that they, in effect, throw them a bone occasionally. And by certifying facilities that don't qualify under the statute and don't qualify under the court's rules, they're throwing them a bone to make life easier when they have other enforcement actions. Now, does the record reflect that? No. But do we believe that to be the case? Absolutely. My time is up. Thank you. Thank you. Thank you. May it please the Court. I'm Assistant Attorney General Richard Husek, Counsel for the State Appellees, principally the Pollution Control Board in this case. And I urge the Court to affirm the appellate court's ruling that there is no jurisdiction to review the PCB's decisions in this case under the governing statutes. Is there any right to any appeal on a denial of intervention by the PCB? There is not under the statutes. And I want to put one issue to rest, which is the tax on the integrity of the PCB as a governmental body. There is a well-established legal presumption that government officials and agencies act in good faith. And to overcome that presumption, you would need something more than speculation, surmise, and ad hominem attacks on their integrity here. The PCB finds this unprofessional and beneath the dignity of any response, other than to say that the plaintiff's counsel has just admitted that there is nothing in the record to support these attacks on their integrity. The fact of the matter is that these petitions were pending before the Illinois Environmental Protection Agency for an extended period. They were subject to technical review. These types of proceedings have been conducted many times in the past. The question, however, is what is the legislative intention here? If the Court rules that the PCB's decisions in these cases, denying intervention in the case, are not subject to the ruling in Landfill, Inc., and that there is authority under Section 41A of the Environmental Protection Act for review of these things, then the PCB is glad to have a definitive ruling by the Court and to proceed accordingly. We have respectfully submitted that that is not the correct interpretation of the statutes, but the PCB is essentially a temporary way station for the ultimate rulings on those matters. That's for this Court to decide, and the issue is one strictly of statutory interpretation. There's no constitutional right to intervene. There are many statutes in which the General Assembly has given rights to intervene in tax proceedings. Those include tax objection cases. If the PCB certifies property as a pollution-controlled facility, there is authority for taxing bodies to appear before the Department of Revenue with respect to the determination of the application of the relevant formula to decide what the assessed valuation is. All of that is strictly a matter of statutory interpretation. So there's no constitutional right to intervene in these cases. There's no due process principle involved. Really what the Court is here to resolve is, is there any statute that provides authority for review of PCB decisions that deny intervention by an outside party with respect to a property owner's, a taxpayer's application for certification of parts of its property as a pollution-controlled facility? The school district here, despite an indirect downstream financial interest that the PCB has admitted, has invoked Section 41A of the Environmental Protection Act. And the appellate court, we think, for sound reasons, as a matter of statutory interpretation, examined that and said, no, that is not the case. You have two separate statutes here. You have Article 11 of the Property Tax Code that's part of the Revenue Act that gives the PCB a very small part of its statutory authority and jurisdiction to handle matters. And then there's the Environmental Protection Act, which is a separate enactment that provides for the greatest authorization of PCB functions, promulgating rules regarding emissions requirements, adjudicating claims with respect to landfill siting decisions, whether there's been a violation of the statute or the rules or the permits under the EPA. They have separate functions. They both happen to be exercised by the PCB. But they also have separate review provisions. Mr. Helsink, what are we to do with, if you agree, with the proposition that Mr. Witt expressed that there were other cases in which the parties were pointed to the appellate court to take it to the appellate court? Let me parse that comment by the Plaintiffs' Counsel, because I believe that there are two bases for that argument. One is the Reed-Custer case. And the Reed-Custer case, to say that the PCB pointed them to the appellate court, is not a fair characterization. They sought review in the appellate court. The PCB said nothing on the issue. The appellate court said nothing on the issue. So I think the point made was that there's no holding on the jurisdictional question in the Reed-Custer case. It can't be precedential. But obviously that's an inferior court, and that's an issue for this court to decide now that it's in front of it. The other point was that they say that the PCB has constantly and uniformly told parties that they should go to the appellate court under Section 41A with respect to these types of decisions. We addressed that in the appellate court. It was not the subject of any of the briefing here, certainly not in their opening brief, so I didn't take time to address it. But the reality is that the PCB inadvertently and by mistake, as a pro forma provision in its orders, has included the language that if you don't like the result of this order, then go to the appellate court under Section 41A. We explained that that was an inadvertent inclusion of standard language that's part of the PCB's orders generally because almost all of those orders are for matters under the Environmental Protection Act. But to say that that little language at the bottom of these orders that's routinely included should trump the specific holding in the body of the PCB's decision in this case that says, and I quoted at page 9 of my brief, is that the Environmental Protection Act does not give an appeal route for decisions of the board under the property tax code. That was their specific reasoning. That was their specific holding. And so this pro forma language that was inadvertently concluded cannot be characterized as the PCB taking a formal position and telling them that they have to go to the appellate court. I do want to say that if they had relied upon that, it would be of no prejudice to them anyway because if they had filed in the appellate court, but in fact as the PCB formally stated that there was no jurisdiction to do so, there would be no prejudice because there was no jurisdiction. If they had filed in the appellate court, but in fact they only had authority to proceed for administrative review in the circuit court, then there's a Supreme Court rule that governs that situation and provides for a transfer of the wrong court to the correct court. So there was no prejudice from that inadvertent or mistaken notice. I would say that it was forfeited because it wasn't in their opening brief nor was it in their reply brief. It's being brought up for the first time in oral argument, which I think the Supreme Court rules foreclosed reliance on. But in any event, it's wrong. The specific formal holding of the PCB in this case to the extent that the court should give any deference to it on this jurisdictional question is that there is no authority under section 41A for this type of proceeding. And that is in fact what the appellate court ruled. Let me say this. Once the court decides this case, and if they agree with the appellate court that that is correct as a matter of statutory authority to seek administrative review in these cases, the place for the plaintiffs to go if they're unhappy with that statutory restriction on administrative review rights is the legislature. There are equitable arguments that can be made both ways. We've laid them out in our brief. There is the benefit of moving these things along because the person entitled to a property tax certification tax advantage doesn't get that until the certification is finally granted. There might be a fairness concern about not letting these people get involved, but there's a competing concern about how much it would delay the proceedings. And it seems to me that those are the types of things that the legislature can weigh and has in fact already weighed when compared to all these other statutory regimens where they have granted rights of intervention and granted rights of review. In this case, specifically, they did not do so. And the legislative history, I think, is revealing on that point. Before the PCB ever came into existence and the Environmental Protection Act was enacted in 1970, there was already this certification for pollution control facilities in the statute books. It had been created in the 60s. It existed for years. The authority to make these certifications was in the Sanitary Water Board and the Air Pollution Control Board. There were the same provisions as to who could participate in those proceedings, an applicant or a holder. And the rights of review were limited to an applicant or holder. And later, the PCB was created under the 1970 Act, which included Section 1941. And to impute to the legislature at the time that it did so, when the PCB had no authority with respect to these pollution control facility decisions, an intention that they would have the authority to review something that they didn't even have jurisdiction over makes no sense. Then, of course, when they transferred that authority from these two other bodies to the PCB, they did not change anything in the provisions of the property tax code  They left in place Section 11-60, which also makes no sense. If they intended to have, on top of it all, as the plaintiffs argue, this hybrid provision where you can go to the circuit court if you're an applicant or holder, but through no express language, sort of by implication, if you're somebody else, you can go to the appellate court, makes no sense at all. There's no precedent for any such situation where a single administrative order is going to be subject to review in two different courts under two different statutes, one of which doesn't even make reference to the right of review that they claim to exist. Even if, for all the reasons that the appellate court gave about this being an absurd consequence, the more specific provision governing it being rendered superfluous under the plaintiff's interpretation of the statute and the legislative history, if notwithstanding all of that, the court were to conclude that maybe Section 41A of the Environmental Protection Act does provide a vehicle for review of decisions under the property tax code, there's still problems with that. The problem is that they don't meet any of the criteria for review under Section 41A. They're not a party to one of these proceedings. Filing a motion to intervene does not make you a party. I think the law is pretty clear on that. And the alternative is they rely upon an inferior court decision. The Citizens Against Randolph Landfill case that says, well, under the EPA Act, a denial of a motion to intervene constitutes the denial of a hearing on a complaint. I think in our brief we've sort of explained fairly what that specific language in the EPA Act, Section 41A, was intended to refer to. It's intended to refer to the right of anybody to file a petition with the PCB arguing that somebody is in violation of the Act or a rule or a permit, and there's a specific provision in that statute that says that the PCB may deny a hearing on such a complaint if it deems the complaint to be frivolous or duplicative. That provision was intended to allow a right of administrative review for exactly that. It doesn't mean that if they hold a paper hearing on a petition to intervene and deny it, it's the same as the denial of a hearing on a complaint. So even if they get past the first threshold issue of Section 1160 of the Property Tax Code being the exclusive avenue for administrative review of property tax code cases, they still don't meet any of the criteria of Section 41A. In response to the Court's earlier questions about what it should do if it reverses the appellate court's decision and disagrees with its conclusion about jurisdiction, I think the appropriate thing to do is remand. To suggest that the Court should go ahead and address matters on which the appellate court did not first analyze the issue and come up with a decision is inappropriate. In fact, the case that they rely upon, the Madison II Associates case, which held that intervention in the circuit court in the tax objection proceeding is authorized by the Code of Civil Procedure, went on to say that because there was error in that case in interpretation of the proper standard of law with respect to intervention, they would remand it back or they affirm the appellate court's decision to remand it back for the circuit court to decide the intervention issue in the first instance under the proper statutory standard. That's essentially what happened here. The PCB had said, under the landfill case, we believe we do not have authority to allow them to intervene. If we did have such authority, we might allow them to intervene. If, in fact, the Court ---- Counselor, I want to back you up a little bit. Roxanne is claiming that it's any party adversely affected by an order of determination of the board, I believe, under that section of 41A. If that's limited to the actual parties, then what's the purpose of having both that clause and the very first clause which says any party to a board hearing? Why add the additional language, adversely affected? Aren't they already included within that? I believe that they're not identical. I believe that there are parties to board hearings, but there are also situations in which the PCB makes a decision that does not involve a hearing and there is a party to that proceeding in which that party could be adversely affected. I'm not an expert on PCB jurisdiction, but I believe that the two are not coterminous or identical and that that would explain the reason for the multiple references to a party. There are four different ways that they talk about parties in here, in 41A. That is correct. May I answer Justice Carminer's final question? I would just add that in the Lake County Contractors case, this Court specifically addressed that issue and said that the General Assembly consciously used the word person and party. And when they used party, they meant party of record consistent with the 222 Chestnut Inc. and Winston cases that say you have to be a party of record in an administrative proceeding to seek administrative review. And a person does not fall within that category. And so that appears to be a clear holding, we believe, on point with respect to the proper interpretation of that. We thank the Court for its consideration of these issues. We respectfully submit that it should affirm the appellate court's jurisdictional ruling and not go beyond that if it reverses on that, but instead to remand for further proceedings. Thank you so much, Your Honors. You still get your full five minutes. Thank you. Good afternoon. May it please the Court, Counsel. I'm Beth Bauer. I represent WRB Refining. I have just a few brief points I'd like to make today. The first one is that the legislature here with respect to pollution control board's actions on tax certification proceedings intended to circumscribe proceeding. And that is because the pollution control board has expertise in these matters. And under their powers, they've delegated to the EPA to make recommendations. The EPA, of course, also has expertise regarding pollution control facility analysis. When the legislature intends for a taxing body to be a participant to these types of proceedings, it specifically so states. And there are several sections of the statute referenced in the briefs regarding board of review hearings, property tax appeal board hearings, Department of Revenue hearings, and the Department of Revenue specifically places a value on the pollution control facilities for taxation purposes. In each of those instances, the legislature either specifically mentions taxing bodies or mentions, in the case of the Department of Revenue, aggrieved parties or anyone aggrieved can participate. Contrast that with the property tax code provisions at issue here that specifically mention applicants and holders only. So the legislature specifically was more narrow in its language with respect to the property tax certifications before the pollution control board. And while the school district is not allowed to be a party, it does have other means to make its concerns known, such as the public comment process or filing a seeking leave to file a NICAS brief. There's another item in which the WRB would like to set the record straight. And there is, throughout the briefing, the district has misportrayed the financial consequences of pollution control facility certifications, which is evident from the applications for pollution control facilities that are in the record. The dollar figure that's commonly quoted by the district in its comments here today and in its briefs is a cost figure, not a value figure. Their briefs also mention that WRB paid 30 percent of the school district's taxes in 2010 under the tax agreement that existed between the parties at the time. What their papers, and they did not mention here today, is that in their submissions to the appellate court as well as in public records of which the court can take judicial notice, they established that for tax year 2011, the first year in which the parties did not have an agreement, the district successfully petitioned the Board of Review for an increase in the assessed value of the refinery that increased the value by more than four times. That value that increased by more than four times already accounts for the deduction for the pollution control facilities that they have challenged here. When the value increased by that amount, the district then went on to increase its tax levy from $9 million for tax year 2010 under the agreement to more than $36 million in 2011. So the perception that may exist that the school district is somehow being disadvantaged and that they will not be able to provide for the needs of their students is just inaccurate. Finally, Mr. Witt mentioned a certain pollution control facility that he has challenged before the Pollution Control Board on behalf of the district, and that would be the low-sulfur diesel unit. And I would just like to correct a misperception about that. He said that the product produces diesel fuel, which is not actually correct. The refinery can produce diesel fuel aside from the low-sulfur diesel unit. The low-sulfur diesel unit removes the sulfur from that particular product stream. One of the complaints that the district has is that the Pollution Control Board certifies pollution control facilities that do not directly impact the community. Rather, it reduces emissions by an end user such as vehicle emissions. Yet the 28 applications that they have challenged also include projects such as flaring and leak detection and repair systems that do exist at the refinery. Those are specifically designed to reduce air emissions and to keep hydrocarbons from reaching soil and groundwater. So the district is challenging both types of pollution control facilities before the board. Illinois' treatment of this equipment as pollution control facilities is not unique to the WRB refinery. The other refineries in the state also have these similar types of equipment certified as pollution control facilities. Illinois' treatment is not unique among our neighboring states. Several neighboring states also provide similar types of equipment pollution control facility status and either provide a preferential tax treatment as Illinois does or a complete tax exemption. So to the extent that you would find looking to other states instructive, that's what you will find. So WRB asks that this court affirm the decision of the 4th District concerning jurisdiction. And if it's so inclined to move on to its decision on intervention, we would ask that the court affirm the Pollution Control Board's decision in denying intervention. WRB thanks the court for its time. Thank you. Any rebuttal? Yes, sir. The representation was made to the court that there's a detailed analysis that's performed. The application for pollution control certification is a two-page application. Fill in the blank. When they're asked the value of the facility for the ultra-low sulfur diesel unit, they put down $406 million. They didn't indicate which of that was for flaring. They didn't indicate which of that was for the production of ultra-low sulfur diesel fuel. They just lump it all in, $406 million. It's a two-page application. Then they have a one- to two-page narrative report that's very technical in nature. The agency, the Environmental Protection Agency, to whom the board has delegated these matters under the board's rules, not the statute, its rules, the agency then goes through an analysis. And the agency does a one- to two-page report, a technical reviewer to the attorney at the agency. On those occasions when the technical reviewer says this equipment does not qualify as a pollution control facility, on at least two occasions, and it's in the record, the attorney for the agency says, never mind technical reviewer, we're going to recommend certification. Even when the technical reviewer, the engineer, finds that it doesn't qualify. They reference Landfill, Inc. Landfill, Inc. has absolutely no application to the case of Barr. In Landfill, Inc., the court recognized, this court recognized, that the state of Illinois established two agencies with two distinct roles. The Pollution Control Board had its things to do. The Environmental Protection Agency had its things to do. The Environmental Protection Agency had to cite landfills. If the landfill citing was granted, that's the end of it, per the statute. If it's denied, then it goes to the Pollution Control Board for review. The agency in Landfill, Inc. granted the application for a landfill citing permit. The board said, we're going to review it anyway. And this court in Landfill, Inc. said, you can't do that. The board, you cannot encroach upon the authority of the agency. That's got nothing to do with the appellate court and jurisdiction here. The Attorney General said that there is nothing in Reed-Custer that references Rule 41, or Section 41 of the Environmental Protection Act, and I beg to differ. In our reply brief at page SA-041, you see the signature line for the order entered in Reed-Custer. And what they said there in 1990 was, Section 41 of the Environmental Protection Act provides for appeal of final orders of the board within 35 days. The rules of the Supreme Court of Illinois establish the filing requirements. So that's what the Pollution Control Board did 23 years ago. I'm not outside the record because WRB gave us the benefit. That was first raised in the reply brief, right? Pardon me? Did you just mention that it was first raised in the reply brief? That was raised in the reply brief, but the Reed-Custer case has been argued throughout this matter. I think Mr. Hussack's point was he didn't have a chance to respond to anything in his brief, if it wasn't in the opening brief, but that's a minor point. And on the jurisdiction question, which is the major point, how would you respond to, regardless of what they say, whenever they said it, the court either has jurisdiction or it doesn't have jurisdiction? The court either has jurisdiction or the court doesn't have jurisdiction. And what I would say with regard to that is every time a court gets a case, Justice Steigman reminded me of this below, every time a court gets a case, the court has to first analyze whether it has jurisdiction. And in Reed-Custer, the first district appellate court, while observing the history of the case in terms of how it got to the court, the court wouldn't proceed to exercise jurisdiction. To the extent that there's a specific, the specific rule controls over the general, only to the extent that there's a conflict. So the only thing that the property tax code says is that applicants and holders are to go under the administrative review law without telling them where to go. The WRB in their reply brief referenced all these orders that were entered as early as 2002 and every one of those orders the appellate court, the Approval and Control Board, sent the parties to the appellate court. Reference has been made here to other states, and we don't have any citations because this is something that came up new today. In Texas, in Texas you have to, you get pollution control facility treatment only for those items that reduce pollution in the refining function. Only when it's done there. The state of Wyoming, the Wyoming Supreme Court, has looked at Illinois and heralded Illinois for the fact that we have the primary purpose test and Illinois does it right, notwithstanding what the Pollution Control Board is doing, notwithstanding what the Environmental Protection Agency is doing. With regard to the issue of sending us back, I would call to your attention the fact that the Pollution Control Board, at the Pollution Control Board below, the agency specifically acknowledged that the school district had an interest in the outcome of the proceedings. The Pollution Control Board acknowledged that it can grant intervention, or I'm sorry, Section 101-402 of the Board's rules said that you can grant intervention if the person may be materially prejudiced, absent intervention, or the person is so situated that the person may be adversely affected by a final board order. While they denied intervention under Landfill, Inc., the Board specifically said that it had never before seen one source file 35 applications for 35 pollution control facilities in the course of six months, ever. They said that the school district had presented a compelling case that it is singularly affected by the certification process. They said that it is unlikely that any other school district is facing a similar potential loss of several billion dollars' worth of real property from its property tax rules, and that if it were a legislative body creating a certification procedure de novo, which we submit they did when they adopted their rules, that our policy arguments for our intervention might prevail. They also said that if they had the powers of an equity court, such as our policy arguments would prevail. So there's no reason to send us back to have the Board determine whether or not we should intervene. They've already said we should be allowed to intervene. They've just thrown up their hands and said Landfill, Inc., keeps us from being able to do so. Just yesterday, the court, in response to Justice Carmile, just yesterday we had an argument in the Fourth District Appellate Court on an allegation that the Pollution Control Board violated the Open Meetings Act in its consideration of these petitions to intervene. And counsel here mentioned the issue of a paper hearing. There, the Pollution Control Board is saying we've got a right to go into closed session to discuss the pleadings because those are evidence. No, no, this is on record, is it? The reply brief is in our, their reply brief is attached to ours. No, I'm talking about just yesterday. No, I'm referencing the reply brief. I'm sorry. The argument was yesterday. It's attached to our reply brief. But effectively said, they're saying that when they considered our petitions to intervene, they were holding a hearing. So if our petition to intervene was, in fact, in the context of a hearing, then we were clearly a party to that hearing. And given the fact that denied the intervention, we were clearly a party adversely affected by that hearing. So we qualify under all three sections, three of the four sections under 41. We respectfully submit to the request that you reverse the decision of the 4th District, that you reverse the decision of the Pollution Control Board, remand this matter back with the directions to allow us to intervene and create a record applying the proper primary purpose test. Thank you. Case number 115473, the Board of Education of Roxanna Community Unit, School District Number 1, Appellant, versus the Illinois Pollution Control Board, et al. Appellees, is taken under advisement as agenda number 14. Mr. Whitt, Mr. Hussack, and Ms. Bauer, we thank you for your arguments today. This concludes our oral arguments for September 17. Mr. Marshall, the Illinois Supreme Court stands adjourned until Wednesday, September 18, 2013, 930 a.m.